UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT EMERSON EVATT,<br><br>                    Petitioner,<br><br>    v.<br><br>RON HAYNES,<br><br>                    Respondent. | CASE NO. 3:18-cv-05255-RBL-TLF<br><br>**REPORT AND RECOMMENDATION**<br><br>Noted for: February 1, 2019 |

Petitioner Scott Emerson Evatt was convicted after a bench trial of assault in the third degree. Dkt. 22, Respondent's Submission of Relevant State Court Record, Exhibit 1 ("Exhibit 1"). Liberally construing Evatt's 28 U.S.C. § 2254 petition, he contends that the trial court violated his rights to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments. Dkt. 8, Petition for Writ of Habeas Corpus, pp. 3-4; *see also* Exhibit 6, Motion for Discretionary Review in Supreme Court of Washington, pp. 3-4.

The undersigned recommends that the Court deny the petition as to all of Evatt's claims for habeas relief.

REPORT AND RECOMMENDATION - 1

# I. STATEMENT OF FACTS

The Washington Court of Appeals, Division III, summarized the facts underlying Evatt's conviction as follows:

> At around 9:30 p.m. on July 6, 2015, two Tacoma police officers traveling together and one sergeant, traveling separately, responded to a report of a suspicious individual, later identified as Scott Evatt. They arrived at his location at about the same time. Mr. Evatt did not initially comply with their verbal commands to stop walking away from them, but soon did. He dropped to his knees, intentionally dropped a glass methamphetamine pipe within full view, and submitted to being handcuffed. Mr. Evatt had been released from jail three days earlier, was struggling with homelessness, and dropped the pipe with the hope of being arrested for possession of drug paraphernalia. He was aware it was only a misdemeanor, but expected it would get him to jail and "a nice place to sleep." Report of Proceedings (RP) (Trial) [footnote omitted] at 422. He cooperated with the two patrol officers, allowing them to lead him to their car. At that point the sergeant left to speak with the party who had called 911 to express concern about Mr. Evatt.
>
> Mr. Evatt was searched by the patrol officers incident to the arrest, was read Miranda [footnote omitted] warnings, agreed to speak with the officers, and admitted he had smoked methamphetamine earlier in the day using the pipe they had seized.
>
> According to Mr. Evatt, the two patrol officers obtained his Qwest card (presumably during the search), which he later described as his "ID." RP (Trial) at 429. Mr. Evatt believed that one of the officers made a statement about how, if they took his ID away, they could make him "disappear." Id. at 425. The trial court would later find that Mr. Evatt's methamphetamine use could explain delusions Mr. Evatt experienced at this point and thereafter. Mr. Evatt admitted that in addition to smoking earlier, he swallowed a sealed baggie of methamphetamine he was carrying when he first saw the officers' patrol cars approaching, in order to avoid being found in possession and subject to a felony charge.
>
> Whatever Mr. Evatt's reason for perceiving he was in danger of "disappearing," he responded to the threat by bracing himself against the exterior of the patrol car and resisting the officers' verbal and physical efforts to get him into the car. When officers finally forced him into the back seat through the passenger's side door, he managed to roll to the driver's side door, which was open. Both officers ran around to that door to stop him from escaping, and the first to arrive was kicked in the chest by Mr. Evatt and stumbled backward. As Mr. Evatt tried to leave through the open door, his legs were grabbed by one or both of the officers and he

REPORT AND RECOMMENDATION - 2

fell forward, hitting his face either on the floor board of the patrol car or the ground. During the melee, one of the officers radioed for support and the sergeant quickly returned and assisted in restraining Mr. Evatt so that a hobble could be placed on his legs.

Once hobbled, Mr. Evatt was placed in the back seat of the patrol car, where he claims to have heard snatches of conversation between the officers about having tracked him, using something placed in his eye in 2006. The Tacoma Fire Department was contacted for medical care for Mr. Evatt's injuries from his fall, and he told responding medics about having swallowed the methamphetamine. He was transported to Tacoma General Hospital in an ambulance. One of the patrol officers rode along in the ambulance and, according to Mr. Evatt, continued whispering things to frighten him. Mr. Evatt was soon cleared by the hospital, after which he was taken to the jail and booked.

Mr. Evatt was charged with third degree assault, obstructing a law enforcement officer, and unlawful use of drug paraphernalia.

[After various motions and arguments and a competency examination, Mr. Evatt was eventually found competent and permitted to represent himself.]

Mr. Evatt waived a jury and the bench trial took place over a period of five trial days. On December 10, Judge Van Doorninck heard motions.
. . .

Opening statements and testimony began on the morning of December 15 and continued on the 16th, 17th, and 21st. The court heard from five witnesses: the three officers; Dr. Miguel Balderrama, who had attended to Mr. Evatt at the jail; and Mr. Evatt. Judge Van Doorninck heard closing arguments on the morning of the 21st and announced oral findings.

Mr. Evatt's version of events at trial was that he was always compliant with the officers up until he became fearful about being placed in the car and taken someplace to "disappear." He denied that he was ever in the back seat of the patrol car before being injured and hobbled. According to him, as soon as the sergeant left the scene of his arrest, the two patrol officers assaulted him. He contended that city police and county sheriffs in Pierce County do not like him and continually harass him. He argued that he could have proved the harassment if his investigator had obtained records of over 100 arrests that he had hoped to present as evidence. He further contended the patrol officers made up the allegation that he kicked one of them in order to explain to their sergeant why, when the sergeant returned to the scene of what had been a peaceable arrest, Mr. Evatt was being held down and had injuries to his face.

REPORT AND RECOMMENDATION - 3

Virtually all of Mr. Evatt's testimony, questioning, and argument focused on this defense theory and on his effort to show inconsistencies in the three responding officers' versions of events. [Court of Appeals footnote 4: Mr. Evatt demanded the trial judge, Judge Kitty-Ann Van Doorninck, remove standby counsel because counsel had not subpoenaed dental and eye X–rays (citation omitted).] At several points in pretrial proceedings and at trial, Mr. Evatt exhibited delusional and paranoid thinking about having been kidnapped and tortured by police in 2006, as he had reported to Dr. Duris. On August 5, he evidently filed a motion asking to be transported to a hospital for a blood test and an X-ray of his skull, which he contended would reveal that when he was kidnapped in 2006 the police had stitched something into his right eye that they later used to track him. He spoke on a couple of occasions about his belief that an alleged "temporary filling" placed in one of his teeth following his July 2015 arrest was something else, because it was square and had been placed in a healthy tooth. RP (Trial) at 406–07. He claimed that a glucose shot given to him in the ambulance following his arrest had caused abscesses on his lower back.

While he claimed to believe these things, he also appears to have understood that no one else believed them, acknowledging to Judge Van Doorninck at one point, "I know it sounds crazy, but I'm telling you. I know it for a fact, I'll stake my life on it, that there's something stitched in my eye cavity." Id. at 404. He even stated, "[I]f I have to pop my eyeball out to prove it to the Court, I will. I will go with one eye before I go out there any more and deal with these cops tracking me." Id. at 403–04.

For the most part, however, Mr. Evatt heeded the court's instruction to focus on what happened on the night of July 6, 2015. His delusional statements about other matters, although a focus of Mr. Evatt's appeal, appear in no more than 20 pages of the 620–page trial transcript. [Court of Appeals footnote 5: Judge Van Doorninck had to intervene and provide redirection at every step of the trial (citations omitted).] He focused instead on what he argued was the implausibility of the patrol officers' story, emphasizing the facts that (1) he wanted to be arrested, (2) he would not have taken the chance of assaulting officers armed with tasers and guns, and (3) two large, able-bodied, officers could not possibly have had as much trouble with a handcuffed suspect as they claimed to have had with him.

At the conclusion of trial, the court dismissed the obstruction charge but found Mr. Evatt guilty of the uncontested use of drug paraphernalia charge and the charge of third degree assault. The judge orally ruled that she did not believe the officers ever made threatening statements about making Mr. Evatt disappear, but Mr. Evatt believed they did, was frightened, and his fear explained why he did not want to get into the patrol vehicle. After she announced her decision, Mr. Evatt repeatedly expressed frustration that she believed the officers rather than him until

REPORT AND RECOMMENDATION - 4

> she cut him off, saying "I'm not going to argue with you anymore," and recessed. RP (Trial) at 619.
>
> At sentencing two days later, Mr. Evatt appeared in a suicide smock and with a bandaged left eye. The prosecutor reported to the court that according to jail staff, Mr. Evatt had become very agitated the night before about something placed in his eye and had injured it. RP (Sentencing) at 4–5. Asked by Judge Van Doorninck what was going on with his eye, Mr. Evatt explained that he had tried to pull it out because no one believed that something had been implanted in it by police. Id. at 6–8. While Judge Van Doorninck commented on why she believed Mr. Evatt was "competent to proceed, as you have been all throughout these proceedings," she took a break to have him meet with the jail's mental health professional. Id. at 13. After the jail mental health professional reported to Judge Van Doorninck that he believed Mr. Evatt could proceed with sentencing, the judge explored sentencing options with Mr. Evatt at length.
>
> . . .

Dkt. 21, Exhibit 2, Unpublished Opinion, *State v. Evatt*, Washington State Court of Appeals, Division III, No. 34963-2-II, at 2-14, noted at 199 Wn. App. 1020 (2017), *review denied*, 189 Wn.2d 1044, 409 P.3d 1059 (2018).

On appeal, the Washington Court of Appeals affirmed the conviction, though it remanded for resentencing. Dkt. 21, Exhibit 2; Exhibits 3-5 (appellate briefs).

Evatt sought review by the Washington Supreme Court. Exhibit 6. The Washington Supreme Court denied review on February 7, 2018. Exhibit 7. The Washington Court of Appeals issued its mandate on February 20, 2018. Exhibit 8.

Evatt did not seek collateral relief in state court. He filed a § 2254 petition for writ of habeas corpus on April 26, 2018. Dkt. 8.

## II.   STANDARD OF REVIEW

When a state court decides a claim on the merits, a federal court may grant habeas corpus relief "only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

REPORT AND RECOMMENDATION - 5

if the state court decision rests on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Tamplin v. Muniz,* 894 F.3d 1076, 1082 (9th Cir. 2018). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

Application of Supreme Court precedent may be considered unreasonable only if the state court's decision is "more than incorrect or erroneous"—it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003); *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extend[s] a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuse[s] to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *Murray v. Schriro,* 745 F.3d 984, 997 (9th Cir. 2014). A state court's decision need not cite to the United States Supreme Court's cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Murray*, 745 F.3d at 998 (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam)).

This is a "'highly deferential standard'" that "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). If "'fairminded jurists could disagree' on the correctness of the state court's decision," this Court cannot grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)).

REPORT AND RECOMMENDATION - 6

1  "Habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'

2  not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v.*

3  *Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

4        The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the federal

5  district court to identify the last reasoned decision of a state court concerning the federal issues

6  that are presented in the habeas corpus petition. *Visciotti v. Martel,* 862 F.3d 749, 760 (9th Cir.

7  2016). In this case, the last reasoned opinion is the Washington State Court of Appeals' decision

8  on the merits, affirming the trial court on direct appeal. Dkt. 21, State Court Record, Exhibit 2.

9  *See Barker v. Fleming,* 423 F.3d 1085, 1092-1093 (9th Cir. 2005) (the last reasoned state court

10 decision is the decision by the last state court to issue a decision on the merits—finally resolving

11 the claim on the substance of the law rather than basing its ruling on a rule that precludes state

12 court review of the merits). In determining whether a state court decision was based on an

13 unreasonable determination of the facts in light of the evidence, a federal habeas court must

14 presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may

15 not overturn state court findings of fact "absent clear and convincing evidence" that they are

16 "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

17                                       **III. DISCUSSION**

18 **A.  Cognizable Federal Claims**

19       Evatt does not state his grounds for relief as violations of clearly established federal

20 constitutional law or unreasonable determinations of fact. Dkt. 8, pp. 3-4; *see* 28 U.S.C. §

21 2254(d). Instead, he asks whether the chief judge of the Court of Appeals, Division III, was

22 "correct" in dismissing each of his arguments on direct appeal. Nonetheless, because Evatt cited

23 federal constitutional provisions in those arguments on direct appeal and in moving for review in

REPORT AND RECOMMENDATION - 7

the state Supreme Court, the undersigned construes the petition as raising federal claims. *See* Exhibit 6; Exhibit 4, Appellant's Statement of Additional Grounds for Review; *cf. Sanders v. Ryder*, 342 F.3d 991, 999 (9th Cir. 2003) ("[F]or the purposes of exhaustion, pro se petitions are held to a more lenient standard than counseled petitions.").

**B.  Denials of Continuances (Grounds 1, 2, 3, 5)**

Evatt's first set of grounds for habeas relief relates to the trial court's denial of various requests for a continuance.

- In Ground 1, Evatt asserts that the trial court violated his due-process and confrontation rights in denying a continuance so that his investigator could question three officers involved in his arrest. Dkt. 8, p. 8. In this ground and throughout his petition, Evatt asserts that the trial court "forc[ed] him to trial in four days," denying his due process rights. *See* Dkt. 8, p. 9; Dkt. 23, Petitioner's Response, p. 6.
- In Ground 2, Evatt asserts that the trial court violated his rights in denying a continuance so that his investigator could retrieve what Evatt asserts are 100 police reports that would show that officers had a history of harassing him and were therefore biased witnesses. Dkt. 8, p. 13.
- As part of Ground 3, Evatt asserts the trial court violated his rights in denying a continuance so that he could examine an X-ray of his skull taken after his arrest, and in allowing the prosecutor to provide him his medical records only four days before trial. Dkt. 8, p. 13.
- And in Ground 5, Evatt asserts that the trial court violated his rights in denying his other requests for a continuance so that he could prepare for his defense. Dkt. 8, p. 17. He reasserts the reasons for a continuance mentioned above, and further asserts he should

REPORT AND RECOMMENDATION - 8

have been granted a continuance due to the trial court removing Evatt from the courtroom during a pretrial hearing, the State's delay in providing discovery and a witness list, and the trial court not allowing Evatt to question a mental health professional with "intricate knowledge" of his prior arrests and treatment by police. Dkt. 8, p. 21.

The Court of Appeals addressed these claims in the last reasoned state court decision. Exhibit 2, pp. 27-28.

First, with respect to Evatt's claims that he was deprived of the opportunity to prepare a defense by the prosecutor's failure to provide him with original X–rays or deliver other requested discovery until four days before trial, in the last reasoned decision of the state courts, the Court of Appeals held as follows:

> Mr. Evatt raised the same objections in the trial court, requesting sanctions and a continuance. Judge Van Doorninck did not order production of the original X–ray because she would be unable to read it, but she did order the State to produce the X–ray report. She ruled that no continuance was necessary given the four months Mr. Evatt had to prepare for trial and the four days before trial he had to review the medical records and booking photo. . . .
>
> "A trial court exercises discretion when deciding how to deal with a discovery violation." *State v. Barry*, 184 Wn. App. 790, 796, 339 P.3d 200 (2014). Mr. Evatt does not demonstrate an abuse of discretion. . . .

Exhibit 2, pp. 26-27.

Next, the Court of Appeals considered the trial court's denials of Evatt's other bases for a continuance, finding no error:

> Mr. Evatt argues that by denying his several requests for continuance, the trial court abused its discretion and violated his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and his rights under article I, sections 3 & 22 of the Washington Constitution. He asserts he was entitled to a continuance because (1) Judge Nevin removed Mr. Evatt from court and failed to rule on his motions, (2) Mr. Evatt's investigator did not provide Mr. Evatt with his arrest history or depose the officers, (3) the prosecutor provided

REPORT AND RECOMMENDATION - 9

> Mr. Evatt with untimely discovery, and (4) the trial court denied Mr. Evatt the right to call and question the jail's mental health professional.
>
> We have already rejected Mr. Evatt's argument that discretion was abused when the court failed to grant a continuance for the late production of discovery. As for the jail's mental health professional, toward the end of the evidence the judge engaged in a long colloquy with Mr. Evatt as to what the jail's mental health professional could testify about. Most of what Mr. Evatt wanted her to say was inadmissible, either because it was irrelevant or not a matter of her personal knowledge. The only conceivably admissible evidence he could identify was her treatment of him. He could not identify why that mattered to his defense despite the judge suggesting that he take a lunch hour to think about it and let her know. The court did not abuse its discretion.
>
> A trial court's decision to grant or deny a continuance will not be disturbed absent a showing of manifest abuse of discretion. State v. Campbell, 103 Wn.2d 1, 14, 691 P.2d 929 (1984). Given that Mr. Evatt had four months to prepare for trial, the trial court did not abuse its discretion in denying Mr. Evatt's other motions for a continuance.

Dkt. 2, pp. 27-28.

In reviewing a habeas corpus petition, this Court does not review issues of state law, such as the trial court's use of its discretion to deny Evatt's motions for a continuance. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (errors of state law do not warrant federal habeas corpus relief). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In reviewing a state court's denial of a continuance on habeas review, this Court is not required to conduct "a specific review that looks only at certain factors." *Godoy v. Spearman*, 834 F.3d 1078, 1093 (9th Cir. 2016), *reh'g granted*, 855 F.3d 985. "Instead, the correct question is whether the [state appellate court] reasonably concluded that the trial court did not abuse its broad discretion when it denied [the petitioner's] continuance." *Id.*

REPORT AND RECOMMENDATION - 10

1    Further, even if a trial court abused its discretion by denying a request for continuance,
2 habeas relief can be granted only if there is "a showing of actual prejudice." *Gallego v.*
3 *McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997). This occurs if the trial error had a "substantial
4 and injurious effect or influence" on the jury's determination. *Brecht v. Abramson*, 507 U.S. 619,
5 637–38 (1993).
6    Here, the record shows that Evatt had at least four months to prepare for trial and that
7 during that time he sought to have a trial sooner than it was scheduled. At an August 2015
8 hearing on Evatt's request to represent himself, the trial court also discussed with the parties a
9 continuance of the trial date. Exhibit 9, Verbatim Report of Proceedings for July 14, August 5, 7,
10 and 12, and October 28, 2015, pp. 34, 50. Evatt objected to the State's request for a continuance.
11 *Id.* at 65. The trial court interpreted this as a claim that a continuance would violate his speedy
12 trial rights. *Id.* At an October 2015 hearing, Evatt again objected to a request for a continuance
13 by the State, arguing it already received "five continuances" and that the prosecutor was
14 intentionally delaying his case. *Id.* at 71. The trial court granted the continuance. *Id.* at 72. At
15 that hearing, Evatt was apparently removed at the trial court's request "because his behavior was
16 inappropriate." *Id.* at 75.
17    Evatt's trial was held in December 2015. *See* Exhibits 10, 11. On the date of trial, Evatt
18 requested a continuance for several reasons: to allow time to obtain an X-ray, collect his arrest
19 records, and obtain testimony from the mental-health professional. Exhibit 10, Verbatim Report
20 of Proceedings for December 10, 2015, pp. 9-12, 14-15, 29, 32-33. The trial court denied the
21 motions to continue, noting it was December and the discovery issues had arisen four months
22 earlier. *Id.* at 29. She also found that the 100 arrest records were irrelevant to the events on the
23 date of the charged offense. *Id.* at 29. Evatt argued that he wanted to obtain the mental-health

REPORT AND RECOMMENDATION - 11

professional's testimony about his treatment in jail after his arrest, but he apparently conceded she did not know anything about the day of the charged offense. *Id.* at 33-35.

Given the circumstances in this case, it was not unreasonable for the Court of Appeals to conclude that the trial court did not abuse its discretion in denying Evatt's requests for continuance. *See Ungar*, 376 U.S. at 589. The trial court reasonably determined that the evidence Evatt was seeking was not relevant to his defense at trial.

Evatt also fails to show that his constitutional rights were violated by the State's failure to disclose its witness list until four days before trial. Federal courts may not grant habeas corpus relief for errors of state law, including alleged violations of state discovery rules. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987).

To the extent that Evatt asserts a violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), that claim fails, as well. A defendant is entitled to disclosure "only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667 (1985) (quoting *Brady*, 373 U.S. at 87). A defendant has the burden "to prove that the [particular] evidence was not disclosed to him." *Coe v. Bell*, 161 F.3d 320, 344 (9th Cir. 2001). Evatt does not set forth specific facts to show that the prosecution withheld evidence that was both favorable to him and material to his guilt or punishment. He thus fails to establish a due process violation regarding the disclosure of evidence.

Finally, the record does not support Evatt's assertion that the trial court "forc[ed] him to trial in four days." Dkt. 8, p. 2. Evatt was arrested in July 2015; during hearings in August and October he sought to have his trial sooner, not later. *See* Exhibit 9, pp. 50, 65, 71. Although Evatt points out he was in jail between his arrest and trial and asserts the investigator assisting him was

REPORT AND RECOMMENDATION - 12

"incompetent," he also disavows ineffective assistance as a basis for his petition.[1] Dkt. 8, pp. 8, 10. The trial court concluded that Evatt had adequate time to prepare for trial. Exhibit 10, pp. 28-29. While Evatt vehemently disputes this finding, he cites no evidence to show that it was unreasonable. *See Miller-El*, 537 U.S. at 340.

Evatt asserts—in a conclusory manner and without any factual support in the record—that his due process rights and right to a fair trial were violated. *See Jones v. Gomez*, 66 F.3d 189, 204 (9th Cir. 1995) ("[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Evatt has not shown that any of the above holdings by the Washington Court of Appeals were contrary to or an unreasonable application of Supreme Court precedent.

**C. Evidentiary Rulings (Grounds 3, 4, 6)**

Evatt's second set of grounds for habeas relief challenge the trial court's state-law evidentiary rulings.

- Ground 3 alleges that the trial court denied Evatt's right to present a defense in ruling he could not inspect his skull X-ray.

- Ground 4 alleges that the trial court denied Evatt's right to present a defense in denying his motion to allow him to question the three officers before trial to prove their police reports were fabricated and their testimony perjured.

---

[1] The Court of Appeals addressed a claim Evatt raised in his brief to that court: that his investigator "sold him out" and, in essence, provided ineffective assistance. Exhibit 4, p. 2; Exhibit 2, p. 25. It held that the record did not contain any of the evidence of deficient performance and prejudice that Evatt alleged and that Evatt could present such evidence in a personal restraint petition. Exhibit 2, pp. 25-26. Evatt did not file a PRP.
Evatt insisted on representing himself in the trial court and was found competent to do so, and this issue is not raised in his petition, either. *See* Dkt. 8; Exhibit 2, pp. 6-9.

REPORT AND RECOMMENDATION - 13

1     -     Similarly, Ground 6 alleges a due process violation in the trial court's denial of Evatt's

2     *Knapstad* motion[2] and opportunity to question the three officers before trial.

3     In the last reasoned state court decision, quoted above, the Court of Appeals held that as a

4 matter of state law the trial court did not abuse its discretion in rejecting Evatt's request that he

5 be able to view, and that the judge review, an X-ray taken after his arrest. Exhibit 2, pp. 26-27.

6     The Court of Appeals also rejected Evatt's claim based on the trial court's denial of

7 requests to question the officers before trial. It wrote:

> One of the motions dealt with by Judge Van Doorninck at the outset of trial was Mr. Evatt's "Motion to Show to the Court that officers are falsefully [sic] making Statements, according to the (CAD)7 report." CP at 42–47. The remedy sought was dismissal of the third degree assault charge under CrR 8.3(b). He complains on appeal that the judge refused to rule on the motion and thereby denied him a fair trial.
>
> Judge Van Doorninck ruled that whether the officers' statements were false would be "for the jury to decide and that's something that you can cross-examine the witnesses about," effectively denying the motion. RP (Trial) at 30 (the ruling preceded Mr. Evatt's waiver of jury trial). She told Mr. Evatt that motion practice was not a forum for resolving factual disputes, but she did not refuse to consider his motion. She did not err.

15 Exhibit 2, p. 27.

16     A petitioner is not entitled to habeas relief for incorrect state evidentiary rulings unless

17 federal constitutional rights are affected. *Lincoln*, 807 F.2d at 816. Even if the trial court erred in

18 excluding Evatt's X-ray (Ground 3), this did not rise to the level of a constitutional violation.

19 The trial judge declined to order that the X-ray itself be produced—as opposed to the X-ray

20 report, which she read—because she would not be able to read an actual X-ray. Exhibit 10, pp.

---

[2] Under Washington law, a successful motion under *State v. Knapstad* allows a defendant to avoid a "trial when all the material facts are not genuinely in issue and could not legally support a judgment of guilt." 107 Wn.2d 346, 356 (1986).

REPORT AND RECOMMENDATION - 14

34-37. The Court of Appeals held that this was not an abuse of discretion. Exhibit 2, p. 26. This Court should defer to that evidentiary ruling. *See Cooks*, 395 F.3d at 1080.

This Court must also defer to a state court's interpretation of state law. *Mullaney v. Wilbur*, 421 U.S. 684 (1975). Evatt identifies no constitutional error in the trial court's denial of his *Knapstad* motion and its refusal to find the officers not credible based on Evatt's presentation of evidence before trial (Grounds 4 and 6). Rather, the trial court pointed out that the officers' credibility was an issue for trial, not a pretrial motion. Exhibit 10, p. 30. The Court of Appeals upheld this ruling. Exhibit 2, p. 27. Evatt identifies no grounds for habeas relief in these holdings.

**D. Cumulative Error (Ground 7)**

Evatt asserts in Ground 7 of his habeas petition that cumulative error from the first 6 grounds he identified resulted in a violation of his right to a fair trial.

In the last reasoned state court decision, the Court of Appeals determined that Evatt's cumulative error claim failed because he did not show the existence of a single error, or multiple errors. Exhibit 2, p. 29. Evatt has not shown that this decision was unreasonable.

The Ninth Circuit has held that a claim of cumulative error may rise to the level of a federal constitutional claim. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). Nonetheless, a petitioner has the burden to demonstrate cumulative error and is required to prove the errors harmfully affected his case. Without this proof, the Court of Appeals decision does not violate clearly established federal law.

**E. Insufficient Evidence and Fair-Trial Violations (Ground 8)**

In Ground 8, Evatt alleges that the trial court violated his fair-trial right by relying on perjured testimony by the officers, rejecting his version of the facts, and by finding him guilty

REPORT AND RECOMMENDATION - 15

without taking a recess after closing argument (ignoring Evatt's request to review the transcripts). Dkt. 8, p. 26.

In making this assertion, Evatt seeks to relitigate the facts of his case. He alleges that the three officers who testified at trial were lying. Dkt. 8, pp. 27-30. Evatt also alleges that the trial court should have considered his proffered evidence of past arrests, which he asserts showed the officers were biased against him. The trial court's decision not to permit Evatt a further continuance to obtain his arrest records in an effort to impeach the police officers is addressed above.

This Court must view the evidence "in the light most favorable to the prosecution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). It must assume that the trier of fact resolved any conflicting inferences in favor of the prosecution, and it must defer to that resolution. *Id.* The trier of fact is entitled to believe the State's evidence and disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992). This Court gives "near-total deference" to the trier of fact's credibility determinations. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Here, the trial court found the officers' testimony credible and Evatt's testimony not to be credible. *See* Exhibit 11, Verbatim Report of Proceedings for December 21, 2015, pp. 612-16; Exhibit 12, Findings of Fact and Conclusions of Law re: Bench Trial, pp. 2-3. Although Evatt thoroughly recounts his version of events and asserts that the officers repeatedly perjured themselves, *see* Dkt. 8, pp. 27-30, this Court must defer to the trial court's reasonable credibility finding. The trial court's decision to credit the officers' version of events and to discredit Evatt's version did not violate Evatt's constitutional right to a fair trial. *See Bruce*, 376 F.3d at 957.

To the extent Evatt asserts he is entitled to habeas relief because the trial court lacked sufficient evidence to convict him, that claim fails.

REPORT AND RECOMMENDATION - 16

Under Washington state law, "[a] person is guilty of assault in the third degree if he or she . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." Wash. Rev. Code 9A.36.031(1)(g). A rational trier of fact could have concluded beyond a reasonable doubt that Evatt was guilty of third-degree assault based on the evidence presented at trial. *See, e.g.*, Exhibit 11, pp. 551, 565-66 (Officer Waubanascum's testimony that Evatt kicked Officer Spangler in chest); Exhibit 12, p. 7 (trial court found Evatt kicked Officer Spangler). The state court's adjudication of Evatt's insufficient evidence claim was not objectively unreasonable, and was not an unreasonable application of, or contrary to, clearly established Supreme Court precedent.

## IV. EVIDENTIARY HEARING; EXHAUSTION

The Court has discretion whether to hold a hearing in a federal habeas corpus case. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). It "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474.

A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also, Cullen v. Pinholster*, 563 U.S. 170, 171 (2011). Under these principles, no hearing is required in this case.

A state prisoner must exhaust available state relief before filing a petition seeking habeas corpus relief in federal court. *See* 28 U.S.C. § 2254. The petitioner must provide the highest state court with a full and fair opportunity to consider all federal claims. *Picard v. Connor*, 404 U.S. 270, 276 (1971). The petitioner must do so by specifically characterizing claims as federal, by

REPORT AND RECOMMENDATION - 17

1 either referencing specific constitutional provisions or citing to relevant federal case law. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000). The petitioner "must describe in the state court proceedings both the operative facts and the federal legal theory on which his claim is based." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). General appeals to broad constitutional principles like due process, equal protection, or the right to a fair trial do not satisfy the fair presentation requirement. *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004) (petitioner's reference to "constitutional error" and "deprivation of a fair trial," bolstered only by state law cases that focused on state procedural or state constitutional error, was not sufficient to fairly present the federal constitutional issues).

Here, the State's brief indicates: "Evatt arguably exhausted his available state court remedies by fairly presenting his claims to the Washington Supreme Court." Dkt. 20, p. 7. This is not an explicit waiver of exhaustion. *See* 28 U.S.C. § 2254(b)(3).

Having reviewed Evatt's state court proceedings, the undersigned has some doubt that Evatt exhausted his claims by fairly presenting them as federal claims during his state court proceedings. Nonetheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Because, as discussed above, Evatt's petition does not raise colorable federal claims, the Court should deny it on the merits without holding an evidentiary hearing, and without further inquiry into exhaustion of state remedies. *See Cassett v. Stewart*, 406 F.3d 614, 622-23 (9th Cir. 2005).

## V. CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a certificate of appealability (COA) should issue. Rule 11(a), Rules Governing Section

REPORT AND RECOMMENDATION - 18

2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Mr. Evatt should not be issued a COA. No jurist of reason could disagree with the above evaluation of Evatt's constitutional claims or conclude that the issues presented in regard to those claims deserve encouragement to proceed further. Evatt should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## VI. CONCLUSION

Based on the above, the undersigned recommends Mr. Evatt's habeas petition be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and FRCP 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 1, 2019**, as noted in the caption.

Dated this 17th day of January, 2019.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19